**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                                  Case No. 19-CR-6

**ANDREW CRAWFORD-STARK**
        **Defendant.**

---

## DECISION AND ORDER

The government charged defendant Andrew Crawford-Stark with theft and destruction of mail. 18 U.S.C. §§ 1709, 1703(b). Defendant filed a motion to suppress evidence, and the magistrate judge handling pre-trial proceedings held an evidentiary hearing, then issued a recommendation that the motion be denied. Defendant objects, requiring me to review the matter de novo. Fed. R. Crim. P. 59(b).

**I.**

Neither side specifically objects to the magistrate judge's statement of the background facts. I accordingly adopt that statement (R. 27 at 3-8) and present an abbreviated version of events herein.

On October 24, 2017, a postal customer complained that two "Kwik Trip" gift cards she mailed from Milton, Wisconsin to Whitewater, Wisconsin had not been received. (Evid. Hr'g Tr. [R. 17] at 7.) Special Agent John Todd investigated, discovering that one of the cards had been used at a Kwik Trip location in Wales, Wisconsin on October 5, 2017. (Tr. at 9.) Todd obtained the store's surveillance footage and showed a still image to the Whitewater postmaster, who identified defendant, a part-time clerk at the Whitewater post office, as the

person who used the card. (Tr. at 15.)

On the morning of November 2, 2017, the postmaster advised Todd that defendant abruptly resigned his position. (Tr. at 16.) Concerned that defendant may have been tipped off to the investigation (Tr. at 17),[1] Todd, accompanied by Special Agent Jonathan Sawant, traveled to defendant's residence that morning to conduct an interview (Tr. at 20, 79).

Defendant lived with his mother in a rural part of Wales, with the house located at the top of a long gravel driveway. (Tr. at 22.) After locating the residence, the agents parked in a turnaround area between the house and a detached garage (Tr. at 26-28; Ex. 3B), and on exiting their vehicles they noticed a fire burning in a fire pit in the yard (Tr. at 30.) Although the agents could not from their vantage point—20 to 40 feet from the pit—tell what was burning (Tr. at 39-40, 82), they were concerned that defendant was destroying evidence (Tr. at 30-31, 85-86.) However, before they could investigate the fire, defendant exited the house, and the agents spoke to him in the driveway by their vehicles. (Tr. at 31-32.) Defendant admitted that he used the gift card but claimed that he found it in the parking lot of his gym and denied stealing any mail. (Tr. at 33- 34.) He further stated that he quit his job because it was too hard and he was having personal issues. (Tr. at 34.) Defendant then walked back inside the house, and his mother came out, indicating that she would cooperate in the investigation and that the agents could stay and do what they needed to do; she then walked back inside the house as well. (Tr. at 34, 36, 83, 89-90.)

At that point, Sawant walked over to the fire pit, observing what appeared to be burning mail. Most of the material was burned beyond recognition, but Sawant was able to salvage two

---

[1]Todd knew that defendant's mother was the postmaster at another location. (Tr. at 17-18.)

2

coupons, one addressed a person in Palmyra, Wisconsin, the other to a person in Whitewater, both of which would have been sorted at the Whitewater post office. (Tr. at 38-42, 86-87; Ex. 4, 5.) Defendant then came back out of the house, indicating that the coupons were probably out of Palmyra, and that he had started the fire about 20 minutes ago. (Tr. at 41, 43.) However, he again denied stealing mail. (Tr. at 41.)

The agents then turned their attention to defendant's vehicle, which was parked next to the garage, about 20 to 30 feet away. Todd knew from his investigation that defendant had used the vehicle as part of his postal duties, and he suspected there might be U.S. mail inside. (Tr. at 44-46.) Todd walked over to the vehicle, looked in the window, and observed what appeared to be U.S. mail. (Tr. at 47-48.) Defendant followed the agents over to the vehicle, and the agents asked him to show them the items they observed. (Tr. at 48-49, 93.) Defendant got into the vehicle, put his hands over the storage compartment (as if to shield the contents from view), then exited the vehicle, shut the door, and told the agents to leave. (Tr. at 49-50, 84.) Up until that point, defendant had given no indication he wanted to end the interview or eject the agents from the property. (Tr. at 50.)

The agents decided to freeze the scene and apply for a search warrant for the vehicle, which a magistrate judge issued that afternoon. (Tr. at 50-51; Ex. 6.) On execution, agents recovered gift cards, coupons, magazines, and other mail matter, and defendant subsequently made an inculpatory statement. (Tr. at 51, 53; Ex. 6, 7.)

Defendant seeks suppression of the coupons pulled from the fire pit, the mail found in his vehicle, and (as fruit of the poisonous tree) his resulting statement. The magistrate judge concluded that the agents did not physically intrude on a constitutionally protected area—the home's "curtilage"—when they examined the fire pit and looked in the vehicle. (R. 27 at 11-

3

16.) In the alternative, he concluded that exigent circumstances justified the search of the fire pit (R. 27 at 17-20), and that defendant impliedly consented to the search of the vehicle (R. 27 at 21-22). He accordingly recommended the motion be denied.

**II.**

A defendant objecting to the search of a particular area bears the burden of proving a legitimate expectation of privacy in the area searched. United States v. French, 291 F.3d 945, 951 (7th Cir. 2002). A reasonable expectation of privacy exists when the complainant exhibits an actual (subjective) expectation of privacy and the expectation is one that society is prepared to recognize as reasonable. Id.

Nowhere are expectations of privacy greater than in the home, Segura v. United States, 468 U.S. 796, 820 (1984), and warrantless searches inside the home are presumptively illegal, Payton v. New York, 445 U.S. 573, 586 (1980). This protection extends beyond the four walls of the house to the "curtilage" as well. French, 291 F.3d at 951; see also Collins v. Virginia, 138 S. Ct. 1663, 1670 (2018) ("When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred. Such conduct thus is presumptively unreasonable absent a warrant.") (internal citation omitted); Florida v. Jardines, 569 U.S. 1, 6 (2013) ("[T]he right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window."). A home's curtilage encompasses the area outside the house itself but so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part of the home. French, 291 F.3d at 951; United States v. Pace, 898 F.2d 1218, 1228 (7th Cir. 1990). To determine whether an area falls within the curtilage, the court considers (1) the proximity of the area to the home, (2) whether the area is included

within an enclosure surrounding the home, (3) the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by. United States v. Dunn, 480 U.S. 294, 301 (1987); Bleavins v. Bartels, 422 F.3d 445, 451 (7th Cir. 2005).

While warrantless searches and seizures within a home are considered presumptively unreasonable, there are certain narrow exceptions. United States v. Haldorson, 941 F.3d 284, 294 (7th Cir. 2019). For instance, a warrantless entry and search may be permitted where the police had an objectively reasonable belief that there was a compelling need to act and no time to obtain a warrant. Id.; see also United States v. Venters, 539 F.3d 801, 806-07 (7th Cir. 2008) ("[T]he Fourth Amendment does permit an officer to enter a house without a warrant where there is (1) probable cause supporting the entry; and (2) exigent circumstances."). Courts have recognized that such "exigent circumstances" exist where there is a need to prevent the imminent destruction of evidence. See, e.g., United States v. Ross, 741 F.3d 743, 748 (7th Cir. 2013); United States v. Lenoir, 318 F.3d 725, 730 (7th Cir. 2003). When determining whether exigent circumstances exist, the court must analyze the situation from the perspective of the officers at the scene; the court asks not what the police could have done but rather whether they had, at the time, a reasonable belief that there was a compelling need to act and no time to procure a search warrant. United States v. Marshall, 157 F3d 477, 482 (7th Cir. 1998).[2]

---

[2]Another exception is voluntary consent given by a person with authority. United States v. Henderson, 536 F.3d 776, 779 (7th Cir. 2008). Consent can be express or implied, United States v. Risner, 593 F.3d 692, 694 (7th Cir. 2010), and implied consent may be manifested verbally or nonverbally, United States v. Sabo, 724 F.3d 891, 893 (7th Cir. 2013). In determining whether an individual consented, the court considers the totality of the circumstances. United States v. Raibley, 243 F.3d 1069, 1075 (7th Cir. 2001); see, e.g., id. at 1077 (finding that a shrug of the shoulders, combined with the defendant's subsequent actions, permitted an inference of consent). Although ordinarily mere acquiescence is not enough to

5

**III.**

The parties extensively debate whether the agents trespassed onto the curtilage when they searched the burn pit and looked in the vehicle windows. In siding with the government, the magistrate judge substantially relied on the fact that defendant put in no evidence regarding the uses to which the areas at issue were put. (R. 27 at 13-14.) Defendant contends that he did not present such evidence at the hearing because (1) the government did not initially defend the motion based on the curtilage issue and (2) he reads Dunn to focus on what the police knew about how the area was used. (R. 35 at 3.) Nevertheless, defendant indicates that he is prepared to supplement the record at a de novo hearing (R. 30 at 5, 8) and with his reply brief he submits an affidavit discussing how he and his family use the yard and driveway (R. 35-1). For its part, the government stresses the absence of a fence or gait blocking access to the driveway. (R. 34 at 18-19.)

It may not be necessary to decide these thorny issues. See United States v. Palomino-Chavez, 761 Fed. Appx. 637, 647-47 (7th Cir. 2019) (Hamilton, J., concurring) (discussing how under Collins and Jardines driveways and yards may enjoy greater protection than previous Seventh Circuit case-law afforded). For the reasons set forth in § IV. below, I agree with the magistrate judge that exigent circumstances supported the search of the fire pit. The actual search of the car was authorized by a warrant, so the issue becomes whether that warrant would have been sought and issued even if the agents had not first walked over and peered

---

show voluntary consent, Risner, 593 F.3d at 695, the court may consider as part of the analysis the defendant's failure to object to the officer's presence in the area, see, e.g., United States v. Lewis, 608 F.3d 996, 999-1000 (7th Cir. 2010). As indicated above, the magistrate judge concluded that defendant impliedly consented to the officers walking over to and looking in the window of his vehicle.

6

into the vehicle's window. See United States v. Moody, 664 F.3d 164, 167 (7th Cir. 2011) ("[T]his court devised a two-part inquiry to determine whether evidence has been obtained by independent legal means: (1) whether an officer's decision to seek a warrant . . . resulted from what he had seen during the unlawful search; and (2) whether the illegally obtained evidence caused the magistrate to issue the warrant.").

In the warrant application, Todd relied on the items Sawant recovered from the burn bit and on defendant's actions after he requested defendant hand him any items of mail in the vehicle. (Ex. 6 at 4.) The affidavit does not contain Todd's observations when he looked in the vehicle's window; thus, they could not have factored into the magistrate's probable cause analysis. However, before ruling on this issue, I will permit the parties to file supplemental memoranda addressing whether, even if the police intruded on the curtilage when they walked over and peered into the car, the warrant would still have been sought and issued.

**IV.**

The agents clearly had probable cause to believe that defendant stole mail from the Whitewater post office, and that he was destroying the evidence of such theft in the burn pit on his property. Todd confirmed through surveillance footage that defendant used the gift card sent from Milton to Whitewater, sorted in the post office where defendant worked; the agents were not required to accept defendant's claim that he found the card in the parking lot outside his gym. See District of Columbia v. Wesby, 138 S. Ct. 577, 588 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."). The agents also reasonably suspected that, given his abrupt resignation that morning (and his mother's high ranking position within the postal service) that defendant had been tipped off to the investigation. (Tr. at 17-18.) The agents further knew, based on their training and

7

experience, that persons suspected of mail theft may try to hide or destroy the evidence, including by burning it. (Tr. at 19, 86.) Finally, the agents reasonably worried that the suspected mail matter in the burn bit would be gone by the time they got a warrant; indeed, most of it was charred beyond recognition by the time Sawant looked into the pit.[3]

Defendant argues that the agents suspected him of stealing just two pieces of mail, one of which he had used on about October 5, 2017, presumably discarding the envelope in which it came at that time; this left just one piece of unaccounted for mail. Defendant further notes that it is common for people in rural Wisconsin to burn leaves and brush in the fall. Given these considerations, defendant argues that it was objectively unreasonable for the agents to conclude that the "good size" fire they observed contained stolen mail as opposed to yard waste. (R. 30 at 11-12.)

"Probable cause is less than preponderance of the evidence." United States v. Simon, 937 F.3d 820, 833 (7th Cir. 2019). That the fire pit could have contained yard waste does not defeat that showing. See United States v. Cherry, 920 F.3d 1126, 1137 (7th Cir. 2019) ("[P]robable cause does not require hard certainties, only probabilities.") (internal quote marks omitted). Defendant's argument that the agents were looking for a single piece of paper allegedly stolen a month earlier ignores the context of this investigation. (R. 35 at 9-10.) The agents knew that defendant had resigned his position just a few hours before they arrived on the property, giving them reason to suspect he had just recently been tipped off —and thus had a motive to destroy evidence of his mail thefts at that time. Nor does the fact that the size of

---

[3] As the magistrate judge noted, the agents probably should have checked the pit before speaking to defendant and his mother, but because Fourth Amendment standards are objective the manner in which the agents decided to proceed is not dispositive. See United States v. Schmidt, 700 F.3d 934, 938 (7th Cir. 2012).

8

the fire exceeded what was necessary to burn a single envelope mean the agents were required to ignore their concerns that defendant was destroying evidence. For these reasons and those stated by the magistrate judge, I find the search of the burn pit supported by exigent circumstances.

**V.**

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation is adopted, in part, as stated herein.

**IT IS FURTHER ORDERED** that the parties file simultaneous supplemental memoranda addressing the issue referenced in § III. above on or before **December 24, 2019**.

Dated at Milwaukee, Wisconsin, this 10th day of December, 2019.

s/ Lynn Adelman
LYNN ADELMAN
District Judge